IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NICOLE EGBERT O/B/O C.L.S., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | REPORT AND RECOMMENDATION <br><br> Case No. 1:16-cv-00120-JNP-DBP <br><br> District Judge Jill N. Parrish <br><br> Magistrate Judge Dustin B. Pead |

This case was referred to the court under 28 U.S.C. 636(b)(1)(B). (ECF No. 20.) Currently pending before the court is Plaintiff Nicole Egbert's ("Plaintiff") appeal of the Commissioner of Social Security's decision denying Plaintiff's minor child, C.L.S.'s ("Claimant") claim for Supplemental Security Income under Title XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 1381–83c. Having considered the parties' briefs, the administrative record, and the relevant law, this court **RECOMMENDS** that the district court **REMAND** the Commissioner's decision for further consideration.

## I.  PROCEDURAL HISTORY

Plaintiff's application for benefits was denied initially on November 8, 2012, and upon reconsideration on February 14, 2013. (Tr. 104–05.) ALJ Gilbert A. Martinez conducted an administrative hearing in April 2014 and held a second hearing in January 2015. On February 13, 2015, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 14–26.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–5.) Plaintiff then filed the instant case.

## II. MEDICAL HISTORY

Claimant was born in 2007 and was 7 years old on the date of the ALJ's decision. (Tr. 26, 207.) Plaintiff was in kindergarten at the time of the hearing. (Tr. 37–38.)[1] As early as 2010, Plaintiff voiced her concern to physicians that Claimant may have autism. (Tr. 322.)

### 2012

In January 2012, Isabel Lau, M.D., referred Claimant to a developmental pediatrician for possible development disorders. (Tr. 325.) Dr. Lau noted that Claimant had a flat affect and his speech was difficult to understand. (Tr. 322.)

In March 2012, Karen Christensen, M.D., evaluated Claimant and reported "a very likely probability of autism." (Tr. 346.) Dr. Christensen noted Claimant could not reliably identify shapes, acted disinterested in other children and possessively of his toy truck. (Tr. 346.) Dr. Christensen suggested Claimant participate in the Northern Utah Autism Program. (Tr. 347.)

In August 2012, Anita Ire, L.C.S.W., from the Northern Utah Autism Program, indicated she observed Claimant for only eight days, but in that short time noted he had "obvious" or "serious" problems carrying out simple instructions, handling frustration, patience, paying attention, caring for his physical needs, following rules, and asking for help. (Tr. 248–51.)

In October 2012, Craig Swaner, Ph. D., examined Claimant and noted no signs of autism. (Tr. 338.) He noted that Claimant had a limited vocabulary, could not count to five, and had below-average comprehension skills. (Tr. 341.) Dr. Swaner diagnosed "oppositional deviant disorder" and possible mild mental retardation or borderline intellectual functioning. (Tr. 342.)

---

[1] The Commissioner indicates Claimant was in first grade. (ECF No. 25 at 2) (citing Tr. 246–53, 373–93, 401–79). Despite reviewing over one hundred pages of the record the Commissioner cites, the court did not find any record that indicates Claimant was in first grade.

**2013**

In early 2013, Dr. Ronald Houston[2] reviewed Claimant's medical records. (Tr. 45.) He opined Claimant had less than marked limitations acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself, and no limitations moving about and manipulating objects and health and physical well-being. (Tr. 49–50.)

In August 2013, speech and language therapist Kay Davis examined Claimant. (Tr. 466.) Ms. Davis rated Claimant as average in picture vocabulary and listening. (*Id.*) Claimant had below average syntactic understanding. (*Id.*) Ms. Davis rated Claimant as having poor oral vocabulary, sentence imitation, morphological completion, grammar, semantics; and very poor relational vocabulary, organizing, and speaking. (*Id.*)

**2014**

In April 2014, Claimant received an evaluation at Weber Human Services. (Tr. 359.) Providers at Weber Human Services identified possible diagnoses of Asperger's syndrome, Rett's syndrome, or Pervasive Developmental Disorder. (Tr. 360.) In June 2014, Ryan Houston, Ph. D. performed a consultative examination. (Tr. 349–57.) Claimant scored 13/30 on a mini mental status examination, which places him in the severely impaired range. (Tr. 353.) Dr. Ryan Houston diagnosed attention deficit hyperactivity disorder and borderline intellectual functioning (IQ score of 72). (Tr. 357.) He concluded Claimant would "behave and learn as though he has mild mental retardation." (*Id.*) Dr. Ryan Houston also noted Claimant's earlier autism diagnosis, but stated "a more accurate diagnosis might be an Unspecified Pervasive Developmental Disorder." (*Id.*) He opined Claimant had slightly impaired attention and concentration; delayed

---

[2] This is separate from Dr. Ryan Houston, a psychologist who later evaluated Plaintiff. This report and recommendation will use the full name of both doctors to avoid confusion.

3

speech; poor receptive and expressive language skills; normal recall; somewhat impaired visual perceptual functioning; and had extremely low intelligence. (Tr. 354.)

### III. STATEMENT OF RELEVANT LAW

#### a. Standard for minor disability

A person under age eighteen is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(C)(i). "An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d).

#### b. Process for determining disability under the Act

To determine whether a minor claimant is disabled, Social Security regulations set forth a three-step sequential evaluation process. The adjudicator considers whether the minor claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) had a severe impairment or combination of impairments, and (3) had a condition that met, medically equaled, or functionally equaled the severity of a listed impairment. 20 C.F.R. § 416.924(a). If a decision regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. *Id.*

#### c. Standard of review

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Substantial

evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Where the evidence as a whole can support the agency's decision or an award of benefits, the court must affirm the agency's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## IV. THE ALJ'S DECISION

At step one, ALJ Martinez found that Claimant has not engaged in substantial gainful activity. (Tr. 17.) At step two, the ALJ found Plaintiff suffered from two severe impairments: autism and borderline intellectual functioning. (*Id.*) At step three, the ALJ found that claimant did not meet any listed impairment and did not have any impairment that medically or functionally equaled a listed impairment. (Tr. 17–18.)

## V. DISCUSSION

Plaintiff argues the ALJ's decision, specifically as it relates to whether Claimant's condition constitutes the functional equivalent of a listed disability, is not supported by substantial evidence. Plaintiff argues the ALJ committed three errors. First, Plaintiff argues the ALJ erroneously rejected Dr. Ryan Houston's conclusions. Second, Plaintiff claims the ALJ failed to explain why he rejected the state agency psychological consultants' finding that Claimant had marked limitations in acquiring and using information. Third, Plaintiff argues the medical expert based his testimony on an insufficient factual record according to that expert's own testimony. The court will analyze these arguments in reverse order.

### a. Dr. Ronald Houston's opinion was based on an incomplete record according to his own testimony

The case must be remanded because the Commissioner unreasonably failed to develop an adequate record for the medical expert's testimony. The ALJ has a duty to develop the record in

5

a Social Security matter. *Hawkins v. Chater*, 113 F.3d 1162, 1167–68 (10th Cir. 1997). "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Id.* at 1168. Rather, the ALJ must exercise "reasonable good judgment . . . [to] fully and fairly develop[] the record as to material issues." *Id.* The court finds the ALJ failed in this duty by obtaining an opinion from Dr. Ronald Houston even though the doctor testified that he lacked materials in the record that would impact his opinions. This case involves a circumstance the court hopes is rare. Despite clear indications the medical expert lacked exhibits he believed material to his opinions, the ALJ declined to provide those exhibits and obtain follow-up testimony due to external pressures to rapidly produce decisions.

Dr. Ronald Houston testified at the hearing that he reviewed only exhibits 1-F through 7-F, even though the record also contained exhibits 8-F though 11-F, which were apparently not provided to him for unknown reasons. (Tr. 45, 52.) When counsel mentioned the additional records, Dr. Ronald Houston testified, "Oh, news to me." (Tr. 53.) Dr. Ronald Houston testified that he searched the records for "teacher input," which Claimant's counsel indicated was contained in the missing exhibits. (Tr. 52–53.) As the ALJ and Plaintiff's counsel discussed the missing records, Dr. Ronald Houston testified those missing records "would be helpful for me." (Tr. 53.) When counsel proffered some of the missing material during the hearing, Dr. Ronald Houston stated, "Yeah, see, that's all the stuff I need." (Tr. 54.) He then stated, "I'd be happy to take a look at [the missing information] in an interrogatory, given the new information and I'll leave that all up to Judge Martinez." (*Id.*) The ALJ then clarified once more that Dr. Ronald Houston did not have exhibits 8-F through 11-F. (Tr. 55.) The ALJ confirmed that counsel made a specific motion to provide Dr. Ronald Houston with the missing records and interrogatories to ascertain his opinion in light of the complete record. (Tr. 62.) Thus, the transcript reveals Dr.

Ronald Houston lacked exhibits in the record that contained information material to his opinions and that the ALJ was aware of the gap in the record.

More troubling, the only inference that can be drawn from the record suggests the Commissioner refused to obtain further testimony because she is concerned about producing decisions rapidly.[3] The ALJ noted that the exhibits were submitted months prior to the hearing. (Tr. 57–58.) The ALJ stated, "it's been in for a while so he should have had all that." (Tr. 58.) The ALJ then stated: "Well, the sad news is this hearing started April 1st and here it is . . . January, so by the time we do . . . interrogatories we may be a whole year adjudicating this case. . . .and there is tremendous pressure from Denver Regional Office and headquarters . . .to not delay." (Tr. 59.) The ALJ continued to explain that if he delays, "they send me . . .nasty notes." (Tr. 60.) This appears to be the last reference to the missing materials. The ALJ does not suggest in his opinion that he later provide Dr. Ronald Houston with the missing materials. Rather than base the decision on the merits of this case and this child's medical situation, the decision rests on an incomplete record occasioned by administrative policy favoring speed over substance. Thus, the court concludes the Commissioner did not exercise reasonably good judgment to fully and fairly develop the record.

The Commissioner argues that the ALJ had no duty to obtain testimony from a medical expert and thus there was no error here. The Commissioner's argument is quite beside the point. Once the ALJ elected to use medical expert testimony, he had an obligation to ensure the testimony elicited from that expert was reliable. Here, the medical expert explicitly stated that he needed the missing information to properly form his opinion. The ALJ himself stated Dr. Ronald Houston "should have had" the missing materials. (Tr. 58.) The ALJ had a duty to provide such

---

[3] The court purposely refers to the Commissioner here rather than the ALJ. Taking the ALJ at his word, this problem is one of policy, not one of the ALJ's making.

critical missing information before relying on Dr. Ronald Houston's opinion. An opinion formed without necessary factual foundation cannot constitute substantial evidence. Accordingly, this case should be remanded.

### b. The ALJ failed to explain why he rejected the state agency psychological consultants' finding

The Tenth Circuit has "repeatedly held that 'an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Id.* (quoting *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir.2007)). In *Chapo*, the Tenth Circuit stated it was error for an ALJ to adopt an examining physician's opinion related to a single mental restriction, but reject other mental restrictions offered by that same physician "with no explanation at all as to why one part of his opinion was creditable and the rest was not." *See Chapo* at 1292.

Here, the ALJ committed error because he purported to give these state agency psychological consultants' opinions "great weight," but offered no explanation for rejecting their opinion that Claimant suffered "marked limitations in acquiring and using information." (Tr. 20; *see* Tr. 21.) The ALJ's opinion does implicitly reject that finding because the ALJ found Claimant suffered "less than marked limitation in acquiring and using information." (*See* Tr. 21.) Thus, the ALJ rejected a portion of these consultants' opinions but offers no basis for doing so. Ordinarily, the court might analyze whether this error was harmful, but given the earlier recommendation to remand, it will simply instruct the ALJ to remedy this defect.

### c. The ALJ offered no good reason to afford Dr. Ryan Houston's opinion little weight

The ALJ's only proffered reason for affording Dr. Ryan Houston's opinion little weight is not supported by substantial evidence. An ALJ must consider several factors when determining the weight to afford to a medical source opinion. *See* 20 C.F.R. § 416.927(c)(1)–(6).

8

The ALJ appears to have afforded Dr. Ryan Houston's opinion little weight based on the fourth factor, consistency. *See id.* § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The ALJ cites to Dr. Ryan Houston's opinion that "functionally [the Claimant] will behave and learn as though he had mental retardation." (Tr. 20) (quoting Tr. 357). The ALJ indicated he afforded this opinion little weight "because a further evaluation showed borderline intellectual functioning rather than mental retardation." (Tr. 20.) Yet the "further evaluation" is completely consistent with Dr. Ryan Houston's opinion. Dr. Ryan Houston's full statement is helpful. He stated: "Although [Claimant's] IQ scores were not quite low enough to qualify for an intellectual disability, functionally he will behave and learn as though he had mental retardation." (Tr. 357.) Thus, Dr. Ryan Houston found Claimant's IQ in the borderline range. (Tr. 354.) The "further evaluation" to which the ALJ cites likewise found IQ in the borderline range. (Tr. 376.) Accordingly, the ALJ's comparison demonstrates no inconsistency between Dr. Ryan Houston's opinion and other record evidence. Both evaluations conclude that Claimant has an IQ in the borderline range.

## VI.     RECOMMENDATION

Based on the foregoing, the court **RECOMMENDS** that the District Court **REMAND** the Commissioner's decision for further consideration. Specifically, the ALJ must provide Dr. Ronald Houston, or a substitute medical expert, with the missing records and allow the medical expert to offer a new opinion based on the complete record. The Commissioner must also address the defects related to the analysis of the state agency psychological consultants' opinions and Dr. Ryan Houston's opinion.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* Fed. R. Civ. P. 72(b)(2). Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 13th day of July 2017.

_____
Dustin B. Pead
United States Magistrate Judge